IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

BULLET PROOF TECHNOLOGY OF TEXAS, L.L.C.,
a Texas limited liability company,

      Plaintiff,

v.

SPECIALIZED BICYCLE COMPONENTS, INC.,
a California corporation,

      Defendant.

## COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

Plaintiff Bullet Proof Technology of Texas, L.L.C. ("BPT") files this Complaint against Defendant Specialized Bicycle Components, Inc. ("Specialized") alleging as follows:

### I. THE PARTIES

1. Plaintiff BPT is a Texas limited liability company with its principal place of business at 640 Southpointe Court, Suite 220, Colorado Springs, Colorado 80906.

2. Upon information and belief, Defendant Specialized is incorporated under the laws of the State of California, with its principal place of business at 15130 Concord Circle, Morgan Hill, California 95037. Specialized may be served via its registered agent for service of process: C T Corporation System, 818 West Seventh Street 2nd Floor, Los Angeles, CA 90017.

## II.     JURISDICTION AND VENUE

3. This Court has exclusive jurisdiction of this action for patent infringement pursuant to 28 U.S.C. § 1338(a).

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400.

6. Specialized has minimum contacts with this judicial district such that this forum is a fair and reasonable one. Specialized acting alone or in consort with others has placed the Accused Products (defined below) in the stream of commerce, knowing the likely destination of the Accused Products, and their conduct and connections with the state of Colorado, are such that they should reasonably have anticipated being brought into court in Colorado. For example, Specialized has over 20 licensed dealers in just the Denver metropolitan area, and at least 20 more throughout the District, which Specialized directs customers to through its website at http://www.specialized.com/us/en/dealer-locator. Specialized has also transacted and at the time of the filing of this Complaint is currently transacting businesses within Colorado. Further, Specialized has committed specific acts of patent infringement complained of herein within the state of Colorado. Upon information and belief, Specialized is also registered to conduct business in Colorado. Specialized has also had extensive contacts involving the subject matter of this lawsuit in Colorado, including extensive negotiations with Dr. Kwitek, a principal of BPT, a named inventor on the asserted patent and a resident of Colorado, over the past fifteen years. For these reasons, personal jurisdiction exists over Specialized and venue over this action is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b).

## III.     GENERAL ALLEGATIONS

### A.     Dr. Kwitek Invents a New and Improved Grip Technology

7. In the Spring of 1997, Benjamin Kwitek, the President of BPT, began experimenting with new material formulations in an effort to find a new hand grip that was more durable and comfortable than existing products. Dr. Kwitek recognized at the time that such an advancement would have applicability across several product markets, from chainsaws to golf clubs to mountain bikes, etc.

8. In late 1999, after several years of experimenting with various materials, Dr. Kwitek created a new thermoplastic material that achieved desired results. Dr. Kwitek's inventive formulation was achieved by introducing aramid fibers, e.g. Kevlar®, into a thermoplastic elastomer, e.g. Kraton®. The result was a viscoelastic solid-phase polymer material that provides a grip surface that exhibits increased softness and tact, while also possessing increased durability to withstand tears and wear during repeated or heavy use.

9. On July 10, 2001, Dr. Kwitek filed U.S. Patent Application No. 09/900,977, which issued as U.S. Patent No. 6,558,270 ("the '270 Patent") on May 6, 2003. A true and correct copy of the '270 Patent is attached as Exhibit A. The '270 Patent claims priority to U.S. Provisional Patent Application No. 60/217,028, filed on July 11, 2000, which discloses the use of the novel material to provide a stronger, more comfortable grip and is a continuation in part of U.S. Patent Application No. 09/173,445, filed on October 16, 1998, which is based upon U.S. Provisional Patent Application No. 60/062,215, filed on October 16, 1997.

10. The '270 Patent relates generally to a novel, improved grip comprised of an aramid reinforced thermoplastic. The Abstract of the '270 Patent relevantly provides:

A grip adapted for attachment to an implement including a handle is disclosed. The grip includes a longitudinally extending tubular shell having an inner surface shaped and dimensioned for attachment to the handle of the implement and an outer surface. The grip further includes a viscoelastic hand surface secured about the outer surface of the tubular shell.

11.     Independent Claim 1 of the '270 Patent reads:

A grip adapted for attachment to an implement including a handle, consisting essentially of: a longitudinally extending tubular shell including an inner surface shaped and dimensioned for attachment to the handle of the implement and an outer surface shaped and dimensioned to be gripped by an individual, wherein the longitudinally extending tubular shell is made from a viscoelastic solid-phase polymer material composed of fibrillated and chopped aramid fibers dispersed within a thermoplastic elastomer, wherein the thermoplastic elastomer is either a styrenic thermoplastic elastomer or EVA.

12.     The '270 Patent is valid and enforceable and is presumed valid and enforceable pursuant to 35 U.S.C. § 282.

13.     The '270 Patent was originally issued to Dr. Kwitek, who subsequently assigned his rights in and to the '270 Patent to Bullet-Proof Technologies, LLC, which has assigned all right, title and interest, including the right to enforce and collect past, present and future damages for infringement of the '270 Patent, to BPT.

**B.     BPT Approaches Specialized with the invention in 2000 and 2010**

14.     In January 2000, Dr. Kwitek approached Specialized in an effort to collaborate to bring bicycle grips incorporating the new material to market.  Specialized and InterForm Incorporated—the company formed by Dr. Kwitek to commercialize the product—entered a Confidential Disclosure Agreement on January 31, 2000 in order to further explore this business venture.

15.     On March 31, 2000, Specialized agreed that InterForm would provide Specialized with samples of the new material to examine and test it in a bicycle grip application.  InterForm

further agreed to provide Specialized with a period of exclusivity, during which InterForm would not market or show the material to any other parties in the cycling industry.

16. InterForm shipped approximately 30 pounds of the new material to Specialized in early April 2000. InterForm extended the period of exclusivity to Specialized several times, ultimately providing Specialized with 11 months to examine and test the new material. In March 2001, Specialized ultimately declined InterForm's offer to license the technology and to incorporate it into grips it would sell.

17. Dr. Kwitek did not have contact again with Specialized until late 2010. In the interim, Dr. Kwitek assigned all rights to the '270 Patent to a new entity, Bullet-Proof Technologies, LLC. All rights to the '270 Patent were later assigned to BPT.

18. In 2009, BPT initiated a lawsuit in the Federal District Court for the Eastern District of Texas against Renthal, Ltd. and several of its suppliers for the sale of grips that infringed the '270 Patent. That matter was styled *Bullet Proof Technology of Texas, LLC v. Renthal Ltd, et al.*, Case No. 2:09-cv-00316-TJW-CE. The parties settled the dispute in 2012.

19. On October 15, 2010, BPT contacted Mike Sinyard, the founder and chairman of Specialized, explaining that his competitor was using BPT's technology for grips and that perhaps Specialized would like to revisit earlier discussions concerning Specialized's use of that material in its products. BPT again informed Mr. Sinyard of its patent covering the technology and sent Mr. Sinyard a set of the Renthal grips which were the issue of the then-pending Renthal litigation. Mr. Sinyard responded and acknowledged that the grips were being sent to him.

20. Although delivery of the grips was confirmed, Mr. Sinyard never contacted BPT following the receipt of the grips.

### C. Specialized Releases the Accused Products

21. In 2012, despite awareness that the technology was patented by BPT, Specialized announced the release of aramid reinforced bicycle hand grips. Specialized's current line of aramid reinforced grips (the "Accused Products") includes at least Specialized's SIP XL Locking Grips, Enduro XL Locking Grips, Contour XC Grips, Women's Enduro Locking Grips, Women's Contour XC Grips, and SIP Locking Grips. BPT estimates that Specialized has imported into the United States for distribution at least 250,000 units of Accused Products since commercial introduction of the products.

22. On or around January 24, 2014, BPT again contacted Specialized to discuss licensing the invention disclosed in the '270 Patent. Between January 24 and December 5, 2014, the parties had several discussions and at least one meeting to review the possibility of Specialized licensing the patented technology. At Specialized's request, BPT additionally provided test data demonstrating the Accused Products' infringement of the '270 Patent.

23. After several months of discussions, Specialized declined BPT's offer to license the technology, but has continued to import in to the United States and sell within the United States the Accused Products.

### IV. SPECIALIZED'S INFRINGEMENT

24. Specialized has been and is now making, using, selling, offering for sale within the United States, and/or importing into the United States, at least the Accused Products.

25. BPT has had the composition of one Accused Product, the SIP Locking Grip, examined by a competent laboratory located in Colorado. The results of this testing revealed that the product is comprised of aramid fibers dispersed within a thermoplastic elastomer.

Additionally, Specialized product website notes that the grip contains a "[s]uper tacky, yet durable aramid material." The test results also reveal that the aramid material contained within the SIP Locking Grip consists of fibrillated and chopped aramid fibers. Accordingly, the Accused Products infringe at least one valid and enforceable claim of the '270 Patent either literally or under the doctrine of equivalents.

26. Specialized's infringement of the '270 Patent has at all times been willful, as Specialized released the Accused Products despite actually knowing or at least objectively knowing there is an objectively high likelihood that its actions constituted infringement of a valid patent. Despite this knowledge, Specialized chose to move forward with its objectively risky conduct, and despite knowing that the conduct would harm BPT. Further and also in support of BPT's willfulness claim, Specialized has no reasonable basis for believing that use of aramid reinforced thermoplastic elastomers in its Accused Products does not infringe at least one valid and enforceable claim of the '270 Patent. Further, Specialized was introduced to the technology disclosed in the '270 Patent by Dr. Kwitek in 2000, and again by BPT in 2010. Despite repeated offers and opportunities to test, examine, and license the technology, Specialized chose not to license the technology, but instead just take the technology for itself and to utilize it in the Accused Products regardless of the known rights of another.

## V.   FIRST CLAIM FOR RELIEF
(Patent Infringement Under 35 U.S.C. § 271 – U.S. Patent No. 6,558,270)

27. The allegations set forth in the foregoing paragraphs 1 through 26 are hereby realleged and incorporated herein by reference.

28. Specialized has directly infringed one or more claims of the '270 Patent, in violation of 35 U.S.C. § 271, either literally or under the Doctrine of Equivalents, in this judicial

district and elsewhere by making, using, selling, importing into the United States and/or offering for sale in the United States a product or products that infringe one or more claims of the '270 Patent, including at least the Accused Products.

29. Specialized has had actual knowledge of the '270 Patent since at least 2010 and was introduced to the invention disclosed therein by Dr. Kwitek in 2000. Specialized's infringement of the '270 Patent was willful and in wanton disregard of BPT's patent rights.

30. BPT has been damaged as a result of Specialized's infringing conduct. Specialized is thus liable to BPT in an amount that adequately compensates BPT for such infringement which cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## VI.     PRAYER FOR RELIEF

BPT requests that the Court find in its favor and against Specialized, and that the Court grant BPT the following relief:

A. Judgment that one or more claims of the asserted patents have been directly infringed, either literally, and/or under the Doctrine of Equivalents, by Specialized;

B. Judgment that Specialized account for and pay to BPT all damages to and costs incurred by BPT because of Specialized's infringing activities and other conduct complained of herein in an amount not less than a reasonable royalty;

C. That BPT be granted pre-judgment and post-judgment interest on the damages caused to it by reason of Specialized's infringing activities and other conduct complained of herein;

D. That BPT be awarded treble damages by reason of the willful, wanton, and deliberate nature of Specialized's infringement pursuant to 35 U.S.C. § 284;

E. That BPT be awarded punitive damages;

F. That BPT be awarded costs and expenses of suit, including expert witness fees;

G. That BPT be awarded its attorneys' fees as this is an exceptional case under 35 U.S.C. § 285;

H. That Specialized, its officers, directors, agents, servants, employees, privies, representatives, attorneys, parent and subsidiary corporations or other related entities, successors, assigns, licensees, retail distributors, and all persons in active concert or participation with any of them, be permanently enjoined from further acts of infringement of the '270 Patent;

I. That BPT be granted such other and further relief as the court may deem just and proper under the circumstances.

## VII.     JURY DEMAND

BPT hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

Dated:  December 22, 2014            By:   s/ ROBERT R. BRUNELLI
                                      Robert R. Brunelli
                                          *rbrunelli@sheridanross.com*
                                      George T. Scott
                                          *jscott@sheridanross.com*
                                      SHERIDAN ROSS P.C.
                                      1560 Broadway, Suite 1200
                                      Denver, Colorado 80202-5141
                                      (303) 863-9700
                                      (303) 863-0223 (facsimile)
                                      *litigation@sheridanross.com*

                                      ATTORNEYS FOR PLAINTIFF BULLET
                                      PROOF TECHNOLOGY OF TEXAS,
                                      L.L.C.